IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ANTONIO HUGHES, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil Action No. 21-251-RGA |
| | : |
| SGT. MENTINO DISILVESTRO, et al., | : |
| | : |
| Defendants. | : |

Antonio Hughes, Austell, Georgia. Pro Se Plaintiff.

**MEMORANDUM OPINION**

April 7, 2022
Wilmington, Delaware

/s/ Richard G. Andrews
**ANDREWS, U.S. District Judge:**

Plaintiff Antonio Hughes, a former pretrial detainee at James T. Vaughn Correctional Center in Smyrna, Delaware, since released, filed this action pursuant to 42 U.S.C. § 1983.  (D.I. 3).  The Amended Complaint is the operative pleading.  (D.I. 12).  Plaintiff appears *pro se* and was granted leave to proceed *in forma pauperis.*  (D.I. 5).  He paid the filing fee following his release from JTVCC.  The Court proceeds to screen the Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(a).

## BACKGROUND

The following facts are taken from the Amended Complaint and assumed to be true for screening purposes.  See *Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008).  On April 30, 2017, at 3:40 a.m., Plaintiff, his spouse, and their unresponsive son arrived at Kent General Hospital.  (D.I. 12, ¶ 1).  Kent General Hospital contacted authorities and Defendants Cpl. Hurd and Cpl. Hopkins of the Dover Police Department, along with Defendant Delaware State Police detective Robert Daddio responded and made contact with Plaintiff and his spouse.  (*Id*. at ¶¶ 3, 4).  Plaintiff and his spouse were unwilling to cooperate with the officers while in the presence of Defendants Kent Hospital constable Kahn and Bayhealth officer Timothy Preuss.  (*Id*. at ¶ 4).  Daddio contacted Defendants Delaware State Police detectives Jennifer Buzzuro and Mentino DiSilvestro and informed them of a suspected child abuse case.  (*Id.* at ¶ 5).  DiSilvestro provided the information to Defendant Delaware State Police detective Thomas Ford.  (*Id*. at ¶ 6).

Defendant Dr. Mark Harris pronounced the child dead at 3:54 a.m. and instructed his nurse to ask the parents to come back to the Emergency Department Family Room.

1

(*Id*. at ¶ 7, 8).  They refused, and the Dover Police Department was informed that the parents were uncooperative and attempting to leave the hospital.  (*Id*. at ¶ 9).  Plaintiff alleges that Dr. Harris conspired with the officers to bring the parents to the Family Room because Dr. Harris realized that he could not do so through his own power.  (*Id.* at ¶ 10).

When Plaintiff attempted to leave, Kent General Hospital officers physically apprehended him and his spouse and escorted them to the Family Room.  (*Id*. at ¶ 11).  Buzzuro arrived and Hurd and Hopkins told Buzzuro that the parents were being held in the Family Room.  (*Id*. at ¶ 12).  Once Dr. Harris informed the parents their child had died, he immediately left.  (*Id*. at ¶ 13).  The parents, who were not Mirandized, were questioned in the presence of Buzzuro, DiSilvestro, Ford, and Defendant Delaware State Police detective N. Miller.  (*Id.* at ¶ 14).  DiSilvestro asked Ford to bring the parents to Delaware State Police Troop 3 for additional questioning by Miller because the death was being considered as a homicide.  (*Id*. at ¶ 15).  After he was questioned, Plaintiff was handcuffed and taken to Troop 3 by Defendant Delaware State Police trooper Adkins, Ford, Buzzuro, and/or N. Miller.  (*Id*. at ¶¶ 16-17).

Plaintiff was detained in a cell block for hours and then taken to an interrogation room for further questioning.  (*Id*. at ¶ 21).  After Plaintiff's post-Miranda statements concluded, Defendant Delaware State Police supervisor Gerald Windish informed Plaintiff that he would be processed and charged with a breach of condition of a bond, and not a charge relating to the death investigation.  (*Id*. at ¶ 22).  A bond hearing was held on April 30, 2017.  (*Id*. at ¶¶ 23, 26).  Also, on April 30, 2017, a criminal complaint was filed and it was approved by Windish on May 2, 2017.  (*Id*. at ¶¶ 26, 27).

On May 1, 2017, Plaintiff was charged with a probation/parole violation and an administrative warrant issued for his arrest. (*Id*. at ¶¶ 23, 24). During a May 2, 2017 bail review hearing, Defendant Delaware Deputy Attorney General Stephen E. Smith stated to the Court that if Plaintiff had obeyed the Court's order and stayed away from the family, his son would be alive (*Id*. at ¶ 26). The Court asked if Plaintiff had been charged with homicide and Smith indicated that charges were forthcoming. (*Id*.). During hearings on June 12, 2017 and August 15, 2017, Smith was asked about criminal charges for the death of Plaintiff's son and again informed the Court that there would be charges. (*Id*. at ¶¶ 28, 29). On June 12, 2017, Plaintiff was sentenced to two and one-half years on the probation/parole violation, and on August 15, 2017, he was given an additional sixty days for the violation following Smith's discussion with the Court and his showing the Court a photo of the deceased child. (*Id*. at ¶¶ 29-32).

Between May 10, 2018 and October 15, 2018, numerous reports were filed concerning the death of Plaintiff's son which indicated the case remained pending-active. (*Id*. at ¶¶ 33-38). On January 24, 2019, the Office of the Delaware Attorney General and the Delaware Division of Family Services commenced a civil action against Plaintiff and filed a "Petition for Substantiation on the Child Protection Registry." (*Id*. at ¶ 39). On June 6, 2019 Plaintiff was charged with murder by abuse or neglect in the first degree, and on June 19, 2019, the Office of the Attorney General moved to stay the civil proceedings. (*Id.* at ¶¶ 44, 45). On May 28, 2019, Chanel Green, the mother of the deceased child, was charged with endangering the welfare of a child and criminally negligent homicide. (*Id*. at ¶ 43). On June 23, 2019, she pled guilty to endangering the

3

welfare of a child and prosecutors dropped the criminally negligent homicide charge. (*Id*. at ¶ 46).

On April 29, 2020, while awaiting trial on the murder charge, Plaintiff received discovery.  He alleges it was at this point that he realized his arrest was illegal and that Dr. Harris had conspired with officers to physically apprehend and take him somewhere knowingly against his will.  (*Id*. at ¶ 50).  Plaintiff also discovered that Daddio withheld his April 30, 2017 incident report and that the State withheld Hurd's and Hopkins' incident reports from the discovery altogether.  (*Id*. at ¶ 51).  Plaintiff alleges the incident reports of Daddio, Hurd, and Hopkins were "coincidentally and conveniently completely void of the date of April 30, 2017 in Plaintiff's discovery which added to the delay in Plaintiff filing this complaint."  (*Id*. at ¶ 52).  The reports were handed over the day of trial and provided the actions of Hurd and Hopkins, identified Adalberto Aviles (an officer with the Dover Police Department) and indicated that actions were taken to satisfy Dr. Harris' request to move Plaintiff and his spouse to a secure location.  (*Id*.).  During the trial, Green testified that she was the one who had injured the child.  (*Id.* at ¶ 55).  On July 20, 2021 Plaintiff was found not guilty on the charges and all the lesser included charges.  (*Id*. at ¶ 55).

Plaintiff alleges that:  (1) Dr. Harris conspired with Kohn to seize, transport, and illegally detain him in violation of the Fourth Amendment to the U.S. Constitution; (2) Kohn, Preuss, Daddio, Hurd, and Hopkins illegally detained/arrested Plaintiff in violation of the Fourth Amendment to the U.S. Constitution and Delaware law; (3) while in custody he was interrogated without procedural safeguards (*i.e*., Miranda) by Buzzuro, DiSilvestro, Ford, and Miller; (4) DiSilvestro conspired with Dr. Ford to further the illegal

4

detention/arrest by transporting Plaintiff to police headquarters despite knowing of Plaintiff's desire not to cooperate in violation of the Fourth Amendment to the U.S. Constitution; (5) Adkins, Ford, Buzzuro, and/or Miller handcuffed, patted down, searched, and transported Plaintiff to police headquarters despite knowing of Plaintiff's desire not to cooperate in violation of the Fourth Amendment to the U.S. Constitution; (6) Miller placed Plaintiff in a holding cell for hours leaving him barefoot and cold in violation of the Fourth, Fifth, and Eighth Amendments to the U.S. Constitution; (7) supervisor Windish failed to take actions to curb the action of the foregoing defendants in violation of the Fourth, Fifth, and Eighth Amendments to the U.S. Constitution; (8) Miller did not officially record the action of April 30, 2017 as an arrest, Daddio completely withheld his April 30, 2017 incident report, and the State withheld Hurd and Hopkins incident reports in whole, all to hide the officers' actions in in violation of the Fifth Amendment to the U.S. Constitution; and (9) Smith violated Plaintiff rights on numerous occasions when Smith accused Plaintiff of committing a crime without properly filing an accusatory instrument, waited two years to charge Plaintiff, and another two years to give Plaintiff his day in court in violation of the Fifth and Sixth Amendments to the U.S. Constitution.  (D.I. 12 at 23- 27).

Plaintiff seeks injunctive and declaratory relief as well as compensatory and punitive damages.  (*Id.* at 23-28).

## SCREENING OF COMPLAINT

A federal court may properly dismiss an action *sua sponte* under the screening provisions of 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b) if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary

relief from a defendant who is immune from such relief." *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013). *See also* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant). The Court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his Amended Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. at 94.

A complaint is not automatically frivolous because it fails to state a claim. *See Dooley v. Wetzel*, 957 F.3d. 366, 374 (3d Cir. 2020). "Rather, a claim is frivolous only where it depends 'on an "indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario.'" *Id*.

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when ruling on Rule 12(b)(6) motions. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§1915 and 1915A, the Court must grant Plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

6

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). A plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, 574 U.S.10 (2014). A complaint may not dismissed, however, for imperfect statements of the legal theory supporting the claim asserted. *See id*. at 11.

A court reviewing the sufficiency of a complaint must take three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780,787 (3d Cir. 2016). Elements are sufficiently alleged when the facts in the complaint "show" that the plaintiff is entitled to relief. *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## DISCUSSION

**Statute of Limitations**. Plaintiff complains of acts that took place on April 30, 2017, following the death of his child, through January 24, 2019.[1] He filed his Complaint on February 21, 2021 as determined by the prisoner mailbox rule. *See*

---

[1] Claims filed by Plaintiff that occurred on or after February 21, 2019 are timely filed.

7

*Houston v. Lack*, 487 U.S. 266 (1988); *Burns v. Morton*, 134 F.3d 109, 112 (3d Cir. 1998); *Gibbs v. Decker*, 234 F. Supp. 2d 458, 463 (D. Del. 2002).

For purposes of the statute of limitations, § 1983 claims are characterized as personal injury actions. *Wilson v. Garcia*, 471 U.S. 261, 275 (1985). In Delaware, § 1983 claims are subject to a two-year limitations period. *See* 10 Del. Code § 8119; *Johnson v. Cullen*, 925 F. Supp. 244, 248 (D. Del. 1996). Section 1983 claims accrue "when the plaintiff knew or should have known of the injury upon which its action is based." *Sameric Corp. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998).

The statute of limitations is an affirmative defense that generally must be raised by the defendant, and it is waived if not properly raised. *See Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt. L.P.,* 435 F.3d 396, 400 n.14 (3d Cir. 2006); *Fassett v. Delta Kappa Epsilon,* 807 F.2d 1150, 1167 (3d Cir. 1986). "Although the statute of limitations is an affirmative defense, *sua sponte* dismissal is appropriate when 'the defense is obvious from the face of the complaint and no further factual record is required to be developed.'" *Davis v. Gauby*, 408 F. App'x 524, 526 (3d Cir. 2010) (quoting *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006)). Hence, a court may dismiss a time-barred complaint *sua sponte* under 28 U.S.C. § 1915(e)(2)(B)(ii).

Plaintiff complains of acts on April 30, 2017 through January 24, 2019. Knowing that the Complaint was not timely filed, Plaintiff alleges that it was not until he received discovery from his criminal case on April 29, 2020, that he realized his arrest was illegal, that Dr. Harris conspired with officers to physically apprehend and take Plaintiff somewhere against his will (on April 30, 2017), that Daddio withheld his incident report for the entire day of April 30, 2017, that the State of Delaware (a non-defendant)

withheld Hurd's and Hopkins' incident reports from discovery until the start of Plaintiff's criminal trial and their reports were "void" of the April 30, 2017 date.  Plaintiff alleges this added to the delay in Plaintiff filing this complaint.  (D.I. 12 at 21).  Under Delaware's "time of discovery rule," the statute of limitations is tolled when the plaintiff has suffered an inherently unknowable injury of which the plaintiff is blamelessly ignorant.  *See Dickens v. Coupe*, 2018 WL 366730 (Del. Super. Ct. Jan. 10, 2018).

Although Plaintiff alleges that it was not until he received discovery in his criminal case that harm occurred, it is evident from the allegations that he should have known of the alleged harm given that he was a participant in almost every event of which he complains.  In other words, he was not "blamelessly ignorant" of the events except those claims regarding the incident reports that either did not contain the April 30, 2017 date or were withheld until the start of the criminal trial.  These claims, however,  do not rise to the level of constitutional violations and/or were allegedly performed by a non-defendant.

In addition, the Amended Complaint's allegations provide no basis for the Court to toll the two-year limitation period. Under federal law, equitable tolling is appropriate in three general scenarios:  (1) where a defendant actively misleads a plaintiff with respect to his cause of action; (2) where the plaintiff has been prevented from asserting his claim as a result of other extraordinary circumstances; or (3) where the plaintiff asserts his claims in a timely manner but has done so in the wrong forum.  *Lake v. Arnold*, 232 F.3d 360, 370 n.9 (3d Cir. 2000).  None of these exist.

Plaintiff's claims for actions from April 30, 2017 through January 24, 2019, are barred by the applicable two year limitation period inasmuch as the Complaint was not

filed until February 21, 2021, past the two-year limitation for these claims. It is evident from the face of the Complaint that these are barred by the two year limitations period. Therefore, the claims from April 30, 2017 through January 24, 2019 will be dismissed. Amendment is futile as to these claims.

**Conspiracy**. Plaintiff alleges that on April 30, 2017, Dr. Harris conspired with Kohn and DiSilvestro to seize, detain, arrest, and transport Plaintiff in violation of the Fourth Amendment to the U.S. Constitution. Even were the claims not time-barred, they are not cognizable.

To state a conspiracy claim under § 1983, Plaintiff must show that "persons acting under color of state law conspired to deprive him of a federally protected right." *Gannaway v. Berks Cty. Prison*, 439 F. App'x 86, 93 (3d Cir. 2011). "[T]he linchpin for conspiracy is agreement." *Id*. (quoting *Bailey v. Board of Cty. Cmm'rs*, 956 F.2d 1112, 1122 (11th Cir. 1992). There are no facts showing that Defendants had an agreement, implicit or otherwise, to deprive Plaintiff of his federal rights. The claim is frivolous and will be dismissed.

**Respondeat Superior**. Plaintiff alleges that Windish, as a supervisor, failed to take actions to curb the action of the foregoing defendants in violation of the Fourth, Fifth, and Eighth Amendments to the U.S. Constitution. Even were the claims not time-barred, they are not cognizable. As is well known, there is no respondeat superior liability under § 1983. *See Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016).

A defendant in a civil rights action is not responsible for a constitutional violation in which he did not participate or which he did not approve. *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007); *see also Polk County v. Dodson*, 454 U.S. 312, 325

(1981). Such involvement may be "shown through allegations of personal direction or of actual knowledge and acquiescence." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). The claims against Windish fail as a matter of law and will be dismissed.

**Prosecutorial Immunity**. Plaintiff alleges that Smith violated his rights on several occasions when Smith accused Plaintiff of committing a crime without properly filing an accusatory instrument, waiting two years to charge Plaintiff, and another two years to give Plaintiff his day in court in violation of the Fifth and Sixth Amendments to the U.S. Constitution. (D.I. 12 at 23- 27). All the claims against Smith occurred during criminal proceedings against Plaintiff, i.e., the revocation of bond charge, the violation of probation/parole charge, or the criminal charge brought against Plaintiff in relation to the death of his child.

Prosecutors should not be encumbered by the threat of civil liability while performing judicial or quasi-judicial functions. *See Odd v. Malone*, 538 F.3d 202, 208 (3d Cir. 2008). Prosecutors acting within the scope of their duties in initiating and pursuing a criminal prosecution are immune to suit under § 1983. *Imbler v. Pachtman*, 424 U.S. 409, 410 (1976). The acts of which Plaintiff complains fit squarely within the realm of official prosecutorial duties. *See id*. at 430 (activities intimately associated with the judicial phase of the criminal process, casting the prosecutor as an advocate rather than an administrative or investigative officer, trigger absolute immunity). Smith, therefore, enjoys immunity from §1983 liability for those acts and the claims against him will be dismissed.

**Released Inmate**. After Plaintiff advised the Court that he had been released from JTVCC, the Court entered an order on October 19, 2021 for Plaintiff to either file a

11

long form application to proceed without prepayment of fees and affidavit so that the court could determine whether he was still eligible to proceed without prepayment of the $350.00 filing fee or to pay the balance of the filing fee owed (*i.e.*, $179.60). (D.I. 8). Plaintiff sought and received an extension of time until on or before December 20, 2021 to comply with the order. (D.I. 9, 10).

Plaintiff remitted payment to the Clerk of Court. However, on February 2, 2022, two money orders were returned to Plaintiff by the Clerk's Office without action. The money orders are in the amount of $179.00 and $1.00. (*See* D.I. 15). The Clerk's Office was unable to process both checks because they were both endorsed by Plaintiff and because Plaintiff remitted an overage (*i.e.*, $180.00). The correct amount owed is $179.60. Plaintiff was told to remit a new check or money order in the amount pf $179.60 so that the payment could be properly processed. To date plaintiff has not complied with the October 19, 2021 order. He will be given additional time to do so.

## CONCLUSION

For the above reasons, the Court will dismiss the Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1). While the Court finds amendment futile as to the constitutional or other violations that occurred before February 21, 2019, it is possible that Plaintiff could allege some constitutional or other violations occurring after that date. Thus, leave to file an amended complaint is granted so long as the violations are alleged to occur after February 21, 2019. Also, Plaintiff will be given additional time to comply with the Court's October 19, 2021

An appropriate Order will be entered.